UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER NORMAN                              CIVIL ACTION

VERSUS

EXXONMOBIL CORPORATION                    NO. 23-00330-BAJ-EWD

RULING AND ORDER

Before the Court is Defendant ExxonMobil Corporation's **Motion for Summary Judgment (Doc. 31)**. Plaintiff Christopher Norman brings this action against Defendant for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Plaintiff alleges that he was subject to a hostile work environment based on his race.

Plaintiff opposes Defendant's Motion. (Doc. 43). Defendant filed a Reply Brief. (Doc. 46). For the reasons below, Defendant's Motion will be **GRANTED**, and this case will be dismissed with prejudice.

I.    FACTUAL BACKGROUND

The following facts are undisputed, as set forth in Defendant ExxonMobil's Local Rule 56(b) Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Doc. 31-2), the parties' Joint Proposed Pre-Trial Order (Doc. 54), and the record evidence submitted in support of and opposing the Motion.[1]

---

[1] Under Local Civil Rule 56(f), facts contained in a supporting statement of material facts, if supported by record citations, shall be deemed admitted unless properly controverted. Here, Plaintiff has not filed an Opposing Statement of Material Facts. Accordingly, the facts

In 2014, Plaintiff Christopher Norman began working as an Assistant Operator at ExxonMobil's Baton Rouge Refinery Hydroprocessing and Hydrocracking Unit. (Doc. 54 ¶ 1). Plaintiff is an African American man. (*Id.*).

On April 17, 2022, while on his work shift, Assistant Operator Jonathan Bell "teased" Plaintiff about grease stains from Plaintiff's hair products that appeared on Plaintiff's chair. (*Id.* ¶ 12). Plaintiff then teased Bell for being bald. (*Id.*). Bell is also an African American man. (*Id.* ¶ 11).

While on his work shift, Bell created a "meme" of Plaintiff using a picture from the movie *Coming to America*.[2] Specifically, Bell used a picture of the movie character "Darryl Jenks" with the movie phrase "Let Your Soul Glow" and transposed Plaintiff's face on it. (*Id.* ¶ 14). Bell showed the meme to Assistant Operator John Tucker, and one or both of them then posted several copies of it throughout the area, taped one copy and an oil pad to a chair in the unit's control room, and then videorecorded the chair spinning with the movie's song "Soul Glo" playing in the background. (*Id.* ¶ 15). Tucker is a white man. (*Id.*). Plaintiff had never heard Tucker say or do anything racially derogatory. (*Id.*).

When Plaintiff arrived at work, he discarded copies of the memes and the oil pad. (*Id.* ¶ 21). Only four employees were working in that area at that time. (*Id.* ¶

---

provided in Defendant's Statement of Undisputed Facts are deemed admitted for purposes of summary judgment.

[2] A "meme" is "an amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media[.]" *Meme*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/meme (last visited Apr. 16, 2026).

2

29). Very few people discussed the incident with Plaintiff, and those discussions were limited to that day. (*Id.* ¶ 30).

Plaintiff went to Shift Team Leader Adam Davidson about the incident, and Davidson told Plaintiff he would "take care of it." (*Id.* ¶ 22). Later that day, Davidson and another Shift Team Leader, Jeffrey Parker, called the entire workgroup of the arriving and departing work shifts together, and Davidson instructed the group that the memes must stop. (*Id.* ¶ 32). Although Davidson addressed the entire group, which he believed was necessary because of the history of joking and memes throughout the workgroup, he looked directly at Bell and Tucker during the discussion and considered it to be coaching and counseling for them, which is the first step of ExxonMobil's discipline procedure. (*Id.* ¶ 33). After that discussion, the posting of memes in the unit stopped. (*Id.* ¶¶ 34, 38).

Plaintiff did not hear anything further about the meme after that day, did not see any copies of the meme posted or circulated at work again, and did not see or hear of new memes of himself being posted or distributed. (*Id.* ¶ 37). Plaintiff also did not express any disagreement or dissatisfaction with how Davidson handled that day's incident, nor did he attempt to escalate the matter to upper management or Human Resources ("HR"). (*Id.* ¶ 35).

Plaintiff continued his employment with ExxonMobil for almost six months after the incident without issue. (*Id.* ¶ 36). He was able to perform his job satisfactorily, he did not receive any coaching or counseling, he did not receive any discipline, and he did not have any attendance problems. (*Id.*). On October 3, 2022,

3

Plaintiff gave his two-week notice and voluntarily resigned, writing gratitude for his time at ExxonMobil and citing the feeling that there was little room for growth at the company as the reason for his resignation. (*Id.* ¶ 41). When he resigned, Plaintiff verbally mentioned the April 2022 incident to Process Unit Lead Matthew Accardo. (*Id.* ¶ 43).

The next day, Defendant received a call from the NAACP, whose representative stated the organization had received a complaint from Plaintiff that Plaintiff believed the prior meme and chair video were a form of harassment. (*Id.* ¶ 44). That same day, Defendant enlisted a team to investigate the incident. (*Id.* ¶ 45). The investigation team interviewed Plaintiff, Davidson, Parker, Bell, Tucker, and several other employees. (*Id.* ¶ 48). The information yielded from these interviews included:

(a) according to Bell and Herbert, Bell created the meme;

(b) there were differing accounts regarding who printed and posted copies of the meme (*i.e.*, Tucker said he "may have" printed the copies, but only posted one; Bell and another employee said Tucker did it);

(c) there were differing accounts regarding who retrieved the oil pad and assembled the chair with the oil pad and meme (*i.e.*, Tucker said he may have assisted, but did not act alone; Bell said Tucker did it);

(d) there were differing accounts regarding who crafted the video (*i.e.*, Bell said he and Tucker did it; Tucker said he did not);

(e) according to Shift Team Leader Davidson, Plaintiff had not brought up race

4

when reporting the meme in April 2022;

(f) according to Davidson, when Plaintiff reported the meme in April 2022, he specifically told Davidson he did not want Davidson to go to HR;

(g) this workgroup had a pattern over more than ten years of posting memes where employees of both races were the meme subjects, and there had never been any associated racial tension;

(h) another employee did not believe the meme was racial in nature; and

(i) Plaintiff was not the only African American in his workgroup. (*Id.* ¶ 49).

The investigation team concluded that Bell and Tucker violated ExxonMobil's Harassment in the Workplace policy because the number of memes printed and placed around the workplace and the chair simulation were not acceptable and did not foster an environment of mutual employee respect. (*Id.* ¶ 51). However, based on the overall context, including that jokes and memes were common among this workgroup with employees of both races being subjects, the team did not find the harassment was race-based. (*Id.*). In late October, Bell and Tucker received written discipline. (*Id.* ¶ 52).

Plaintiff does not allege additional incidents of racial harassment before or after the April 2022 incident. (*Id.* ¶ 40). Between June 2014 and April 2022, there were no incidents where Plaintiff believed he was discriminated against or treated inappropriately because of his race. (*Id.* ¶ 10). Plaintiff never filed a union grievance and he never complained to any manager, supervisor, or HR about being discriminated against or harassed because of his race. (*Id.*). The culture at the unit

5

was such that the employees frequently joked with each other, including creating and posting memes about each other, with both white and African American employees being the subject of the jokes and memes. (Doc. 31-2 ¶¶ 9–10).

Defendant's policies prohibit discrimination and harassment based on race and other protected characteristics and retaliation for making complaints or participating in investigations. (Doc. 54 ¶ 2). Per this policy. "[a]ll complaints or concerns should be brought to management's or the Human Resources ['HR'] Department's attention so that appropriate corrective steps can be taken." (*Id.* ¶ 4).

## II.    PROCEDURAL HISTORY

In May 2023, Plaintiff filed suit against Defendant, alleging violations of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. §§ 1983, 1985, 1986, Title VII of the Civil Rights Act of 1964, Louisiana Revised Statutes § 23:332, and Louisiana Civil Code articles 2316, 2320, and 2315. (Doc. 1).

Thereafter, Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court granted Defendant's Motion in part and dismissed Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, 1986, the U.S. Constitution, and La. Civ. Code arts. 2315, 2316, and 2320. (Doc. 17 at 9). The Court permitted Plaintiff to proceed on his Title VII claim and held that Plaintiff "may seek leave to amend his complaint to state facts supporting his claim under La. R.S. 23:332." (*Id.*). Plaintiff did not do so.

Now, Defendant asks the Court to grant summary judgment in its favor on

6

Plaintiff's Title VII claim, and to the extent the claim remains pending, Plaintiff's Section 23:332 claim.

## III.    LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward

7

evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## IV.   DISCUSSION

Defendant asks the Court to issue summary judgment in its favor on Plaintiff's Title VII claim, and to the extent the claim remains pending, Plaintiff's Section 23:332 claim. The Court will address each claim in turn, beginning with Plaintiff's Title VII claim.

### A. Title VII Claim.

Defendant moves for summary judgment on Plaintiff's Title VII claim, contending that Plaintiff cannot establish a *prima facie* case of discrimination. Defendant argues that Plaintiff cannot establish that: (1) the alleged harassment affected a term, condition, or privilege of Plaintiff's employment; (2) Defendant failed to take prompt remedial measures; or (3) the alleged harassment was based on race.

### i.   Legal Standard.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. A plaintiff may establish a *prima facie* case of discrimination if the plaintiff lacks direct evidence of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

8

To establish a *prima facie* hostile work environment claim, a plaintiff must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was because of his race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). If Plaintiff does not prove all of these elements, he cannot succeed on his Title VII claim. "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)).

### ii.    Whether the Alleged Conduct Was Pervasive or Severe.

To affect a condition or privilege of employment, workplace harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stone v. La. Dept. of Revenue,* 590 F. App'x 332, 340 (5th Cir. 2014); *see also Alaniz v. Zamora-Quezada,* 591 F.3d 761, 771 (5th Cir. 2009) (holding that the workplace must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment") (quotation omitted). "All of the circumstances must be taken into consideration[,]" including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

9

with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quotation and citation omitted).

Defendant argues that Plaintiff cannot establish that the alleged conduct was pervasive or severe enough to alter the terms or conditions of his employment. With respect to pervasiveness, Plaintiff testified that in the eight years he worked at ExxonMobil, he experienced no other incidents of racial harassment, comments, conduct, or behavior before or after the April 2022 incident. He further testified that no one at ExxonMobil said anything he would consider to be racially derogatory, and that he did not hear or see anyone doing anything he would consider racially derogatory. (Doc. 31 at 15). With respect to severity, Defendant argues that the incident was not physically threatening nor humiliating, and there was no evidence that the incident unreasonably interfered with Plaintiff's job performance, as the undisputed facts show that Plaintiff was able to appear at work regularly for six months after the incident.

Plaintiff responds that the conduct at issue was "both physically threatening and culturally degrading" because his colleagues violated his personal space and instigated "targeted cultural mockery." (Doc. 43 at 6). Plaintiff further contends that "[t]he pervasive nature of this campaign—which involved posting the [meme] in at least five different locations . . . demonstrates an environment that any reasonable person would find hostile."

To be actionable, there must be "more than a few isolated incidents of [racial] enmity[.]" *Tucker v. United Parcel Serv.*, No. CV 15-00611-JJB-RLB, 2017 WL

2623172, at *8 (M.D. La. June 16, 2017), *aff'd sub nom. Tucker v. United Parcel Serv., Inc.*, 734 F. App'x 937 (5th Cir. 2018) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "Simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted). It is true that "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Lauderdale v. Tex. Dept. of Crim. Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007); *see also Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) ("[A] single incident of harassment, if sufficiently severe, [can] give rise to a viable Title VII claim.") (citing *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007)). But the type of egregious behavior required to meet Plaintiff's burden is not present here.[3]

The Court looks to *Hernandez v. Yellow Transp., Inc.* for factors relevant to considering whether the conduct was pervasive or severe. The undisputed facts show that the alleged discriminatory conduct was not frequent. It occurred once over a few hours and was promptly put to an end by Defendant; no such similar conduct occurred before or after. The facts here further do not indicate that the incident was physically

---

[3] *See, e.g., Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (a single instance of a supervisor directly calling an employee a "Lazy Monkey A__ N___" in front of his fellow employees stated an actionable claim of hostile work environment); *Henry v. CorpCar Servs. Houston, Ltd.*, 625 F. App'x 607, 612 (5th Cir. 2015) (a company forcing employees to attend a performance of a white woman in a gorilla suit on Juneteenth, who made sexually suggestive and racially degrading comments and said "Here's your Juneteenth[,]" was a single instance sufficiently severe to constitute actionable discrimination).

threatening to Plaintiff. Importantly, the incident did not unreasonably interfere with Plaintiff's work performance. He was able to perform his job satisfactorily; he did not receive any coaching/counseling; he did not receive any discipline; he did not have any attendance problems; and he did not indicate that he left his employment because of the incident. The facts taken together, in the light most favorable to Plaintiff, do not raise a genuine issue of material fact as to whether the alleged conduct was sufficiently severe or pervasive for Plaintiff to succeed on a Title VII claim.

Because this is the only theory of recovery Plaintiff asserts under Title VII, his Title VII claim must be dismissed. Accordingly, Plaintiff's Title VII claim is **DISMISSED WITH PREJUDICE.**

### iii.   Whether Defendant Took Prompt Remedial Action.

Assuming *arguendo* that the alleged harassment was sufficiently severe or pervasive, Plaintiff's claim fails for a separate reason: Defendant took prompt remedial action. To succeed on a Title VII claim, Plaintiff must prove that Defendant knew or should have known of the harassment and failed to take prompt remedial action. An employer is not liable under Title VII if the employer takes "prompt remedial action" that is "reasonably calculated to end the harassment." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989) (quotation omitted).

Defendant argues that it took action that successfully ended the alleged harassment. On the same day that Plaintiff complained to him, Davidson met promptly with the employees on Plaintiff's shift and Bell and Tucker's shift and told

them that memes of fellow employees were disallowed, specifically looking at Bell and Tucker while doing so. It is undisputed that the circulation of memes discontinued at this point, and Plaintiff did not experience any subsequent instances of harassment.

Plaintiff disagrees, arguing that Davidson should have escalated the issue to HR. Plaintiff argues that Defendant only sought an investigative report six months after the alleged incident occurred, after receiving a call from the NAACP.

The Court finds that Plaintiff has not established that Defendant failed to react promptly to remedy the incident. Davidson spoke to employees the same day that the incident took place; his response was reasonably calculated to end the harassment, and did, indeed, end the harassment. After Davidson spoke to the employees, they ceased discussing the meme of Plaintiff and ceased creating or circulating memes of one another.

Defendant's corporate policy stated that "[a]ll complaints or concerns should be brought to management's *or* the [HR] Department's attention so that appropriate corrective steps can be taken[.]" (Doc. 43-7 at 7) (emphasis added). In other words, Defendant was not required to escalate the incident to HR under its corporate policy. In accordance with corporate policy, Plaintiff brought the incident to management (Davidson), who addressed that issue with employees that same day. Plaintiff did not express any dissatisfaction with his supervisor's handling of the situation either immediately after or in the following six months that he worked there, and in fact requested that the issue not be taken to HR. Taking the facts together, in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether

13

Defendant's response was both prompt and remedial.

### iv. Whether the Alleged Conduct Was Based on Plaintiff's Race.

Defendant argues that Plaintiff has provided no evidence that the creation and distribution of the meme and the subsequent recording of the chair with the movie's "Soul Glo" song was based on Plaintiff's race. Rather, Bell created the meme, which features hair, after Bell and Plaintiff had joked about one another's hair style, and so the meme and video were about hair, not race. Similarly, Plaintiff offers no evidence that Tucker's distribution of the meme was based on Plaintiff's race.

Conversely, Plaintiff argues that *Coming to America* "utilized exaggerations of African American culture," and thus the meme had a racial nature to it. (Doc. 43 at 6).

Because the Court has concluded that Plaintiff's Title VII claim must be dismissed, the Court need not address whether the conduct at issue was based on Plaintiff's race.

### B. Louisiana Revised Statutes § 23:332 Claim.

Turning to Plaintiff's claim under Louisiana Revised Statutes § 23:332, the Court finds that this claim must also be dismissed. In February 2024, the Court ruled on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court dismissed all of Plaintiff's claims apart from his claims under Title VII and Section 23:332. The Court reasoned that Plaintiff made only a conclusory allegation that Defendant violated Section 23:332 and thereby failed to state a claim for hairstyle discrimination under that state statute, but that Plaintiff "may seek leave

to amend his complaint to state facts supporting his claim under La. R.S. 23:332." (*Id.*). Plaintiff failed to amend his Complaint to state a claim under Section 23:332.

In its Motion for Summary Judgment, Defendant argues that to the extent Plaintiff's Section 23:332 claim remains, it should be dismissed with prejudice for failure to state a claim because Plaintiff did not amend his Complaint. In his Opposition brief, Plaintiff did not discuss his Section 23:332 claim at all, much less offer any argument in response to Defendant's assertion that the claim should be dismissed.

"The [United States Court of Appeals for the] Fifth Circuit makes it clear that when a party does not address an issue in [her] brief to the district court, that failure constitutes a waiver on appeal." *Slaughter v. Torres*, 592 F. Supp. 3d 515, 530 (M.D. La. 2022) (citing *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.); *United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point."); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (explaining that the defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver." "By analogy, failure to brief an argument in the district court waives that argument in that court." *Slaughter*, 592 F. Supp. 3d at 530 (citing *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom., Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014). Because Plaintiff

failed to amend his Complaint and then failed to meaningfully oppose Defendant's assertion that his Section 23:332 claim should be dismissed, the Court concludes that Plaintiff's Section 23:332 claim, to the extent it remains pending, must be dismissed.

Accordingly, Plaintiff's Section 23:332 claim is **DISMISSED WITH PREJUDICE**.

## V.    CONCLUSION

Plaintiff did not present the Court with the evidence required to create a genuine dispute necessitating trial.

Accordingly,

**IT IS ORDERED** that Defendant's **Motion For Summary Judgment (Doc. 31)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's action be and is hereby **DISMISSED WITH PREJUDICE**.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 28th day of April, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16